UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:  Case No.: 17-10690-7

MICHAEL S. HALL and
ANGELA L. HALL,

        Debtors.

---

KEVIN LENFANT and
RITA LENFANT,

        Plaintiffs,
v.          Adversary No.: 17-46

MICHAEL S. HALL,

        Defendant.

---

**<u>MEMORANDUM DECISION</u>**

Defendant Michael Hall made a living through home construction work. On July 17, 2015, he contracted with Plaintiffs for the refurbishing and remodeling of a property in Osseo, Wisconsin. Plaintiffs paid $25,000 for those renovations. The parties then entered into a second contract for the remodeling of property in Rice Lake, Wisconsin. Plaintiffs paid a down payment of $15,000 to Defendant for that project with the understanding the contract price would not exceed $25,000. Under the terms of each contract, any cost exceeding the contract price was to be borne in its entirety by Defendant. If the cost was less than the contract price, the excess would be returned to Plaintiffs. If one of the properties sold for a profit, Plaintiffs agreed to share the profit with Defendant as additional compensation.

Both contracts were terminated in October 2014. Neither project was completed. Plaintiffs then made alternative arrangements for completion at each project and subsequently sold the properties. Neither property sold for a profit.

Defendant acknowledges he was employed as a general contractor and that the funds paid by the Plaintiffs were to be used for labor, services, materials, and plans for the improvements at each property. He also concedes they were separate contracts but argues that the Plaintiffs consented to the use of an estimated $3,000 from the Rice Lake payments on Osseo. Defendant says that Plaintiffs authorized the use of funds from one project for the other, but Plaintiffs deny there was authorization.

Plaintiffs acknowledge that Defendant did a large amount of work on the Osseo project, albeit not well. For example, there was drywalling, but the taping and mudding were bubbled, cracked, and required correction. The kitchen cabinets were installed but not correctly leveled. Electric work was performed, but the person doing so was not licensed, although this was later corrected. Defendant did not directly respond to the cited deficiencies. Rather, he explained there were cost overruns and time delays because of change orders by Plaintiffs. Examples included changing flooring, changing the color and style of countertops multiple times, and making changes in the paint colors.

The Rice Lake project was far less complete when Defendant left. Plaintiffs had questions about what was removed, the timeline for removal, and

what went to salvage. They had questions about what happened to a receipt for $800 of windows that were to be returned for credit. Those questions went unanswered.

It was never anticipated that the Osseo project could be completed for the $25,000 contract price. Both parties were aware of this at the time they entered into the contract. Plaintiffs repeatedly asked Defendant for an accounting of the work and expenditures on each of the projects to no avail. Ultimately the Defendant did provide a stack of receipts to Plaintiffs. They were not organized or separated by project. It was not possible from most of the receipts themselves to determine what project they related to or even whether the receipts were for the Plaintiffs' projects. None of the receipts included labor costs.

Defendant repeatedly told the Plaintiffs—and the Court in his trial testimony—that he had an itemization on his computer. He never produced the computer itemization. He estimated the receipts totaled $15,000 to $20,000. He claims he has another $33,000 in other invoices that were not provided to Plaintiffs. Neither did he produce them at trial. He estimated that he spent $36,000 on Osseo and $12,000 on Rice Lake. Defendant also testified that all suppliers and materialmen were paid in full and there is nothing owed for materials, supplies, or labor.

Plaintiffs brought an action in Chippewa County Circuit Court seeking damages for theft by contractor, breach of contract, theft/conversion, and theft by fraud under Wis. Stat. § 895.446. Plaintiffs moved for summary judgment

3

and Defendant failed to reply. The state court granted summary judgment to the Plaintiffs awarding $23,825 for the unused portion of Plaintiffs' contract payments, $800 for a potential credit for return of windows from the prior owner, and costs of $1,433.91. The judgment, however, does not contain any specific findings of fact or conclusions of law but merely grants Plaintiffs' motion for summary judgment and awards them damages. The judgment does not include an itemization of costs as they relate to the Osseo or Rice Lake properties.

Plaintiffs brought this action to declare the debt nondischargeable. While there were initially two statutory bases asserted, the Plaintiffs withdrew the claim under 11 U.S.C. § 523(a)(2)(A). Thus, the only issue remaining before the Court is whether the debt is nondischargeable for defalcation while acting in a fiduciary capacity under 523(a)(4).

## DISCUSSION

Section 523(a)(4) excludes from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The scope of the term "fiduciary" is a narrowly-defined question of federal law, "meaning that the applicable nonbankruptcy law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property." 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (16th ed.). Typically, the court "must examine the writing" in ascertaining whether a fiduciary relationship exists. *Id.* Where there is no written agreement evidencing a fiduciary relationship, "a technical trust relationship may be created by state statute or common law

4

doctrines that impose trust-like obligations on a party sufficient to render the debtor a fiduciary within the meaning of section 523(a)(4)." *Id.*

A fiduciary relationship exists between Plaintiffs and Defendant. Defendant concedes he was a contractor. Bankruptcy courts look to state law to determine whether the requisite trust relationship exists. 11 U.S.C. § 523(a)(4); *Ganther Constr., Inc. v. Ward (In re Ward)*, 417 B.R. 582 (Bankr. E.D. Wis. 2009). The Western District of Wisconsin previously held that Wis. Stat. § 779.02(5) "creates an express fiduciary relationship." *Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654, 658 (Bankr. W.D. Wis. 1996).

Wis. Stat. § 779.02(5) provides in relevant part:

> [A]ll moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person.

The statute creates an "express trust" within the scope of 11 U.S.C. § 523(a)(4). The Defendant, as a contractor and recipient of the contract funds, was a fiduciary of that trust.

For a finding under section 523(a)(4), Defendant must have possessed a "culpable state of mind," which is defined as one "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013). Defendant admits the funds from the Osseo and Rice Lake properties were

commingled. He says, however, some use of funds from one project for the other was approved by Plaintiffs.

This Court has held a contractor's reckless, willful, or knowing violation of the statute is sufficient to establish "defalcation."' *Midwest Prop. Mgmt. v. Polus (In re Polus),* 455 B.R. 705, 708-09 (Bankr. W.D. Wis. 2011). To determine whether a defendant's action rises to defalcation, courts look at defendant's knowledge of the statute, the circumstances surrounding the violation, and the degree to which the defendant acted in his own self-interest as relevant evidence from which inferences of culpability can be drawn. *See In re Koch,* 197 B.R. at 658 ("Koch's actual or constructive knowledge of the theft-by-contractor statute, or at least of his trust fund duties as a general contractor, would seem to be material.").

From the record, it is not obvious whether Defendant knew about the statute even though he had been in the construction business for more than 20 years and conceded he knew at least generally about construction law requirements. He also acknowledges the money was a trust fund. However, he obviously knew he owed a fiduciary duty to Plaintiffs by virtue of the contract. Defendant claims Mr. Lenfant instructed him to use $3,000 of the Rice Lake funds on Osseo. Given the terms of the contract, that claim is not credible. It was in Mr. Lenfant's interest to keep the funds from the two projects segregated because any expenses over the anticipated costs were to be borne by Defendant. If, for example, Defendant used all the funds for the Rice Lake project, then he would have been required to pay out of his own pocket for the

6

excess in Osseo. It would have made no sense for Mr. Lenfant to allow the funds to be commingled because he would increase his own costs. Effectively, commingling the funds decreased the amount Defendant would have been required to return to Plaintiffs and shielded him from out-of-pocket expenses.

Further, Defendant has provided no record or accounting for the use of the funds. He testified there were no unpaid supplies, subs, or materialmen. He estimated he spent $12,000 on Rice Lake and $36,000 on Osseo. Invoices, estimates, and receipts were given to Plaintiffs by Defendant. Unfortunately, these writings do not identify the contracts with Plaintiffs or contain sufficient detail to be certain as to what they relate. It is not the job of this Court to speculate, and Defendant failed to explain or identify any of those items as specifically related to either project. While he testified he had other receipts and accounting, he did not produce them.

Plaintiffs presented a prima facie case establishing theft by contractor. There is no evidence of disbursements by Defendant. It is conceded by Plaintiffs that Defendant provided some labor and that the various items of work discussed above were performed.

Defendant failed to exercise care in handling the trust funds. His actions were more than mere negligence. In sum, Defendant breached his fiduciary duty in handling the trust funds. Defendant knew there were separate projects. He knew Plaintiffs repeatedly requested an accounting of payments on the project and that a full accounting of all disbursements for each project would be required because he was obligated to return any unused funds to Plaintiffs.

7

His failure to provide that accounting either before or at trial—when he testified it existed—confirms the conclusion that Defendant's actions were more than mere negligence. Defendant therefore possessed knowledge of the "improper nature of the relevant fiduciary behavior," and the debt is nondischargeable under section 523(a)(4). *Bullock*, 569 U.S. at 269.

A majority of courts have held the creditor bears the burden of proof in a proceeding to determine dischargeability under section 523(a)(4). 4 *Collier on Bankruptcy* ¶ 523.10[1][c] (16th ed.). Applying that principle blindly to this case, Plaintiffs would bear the burden of establishing the amount of the nondischargeable debt that resulted from Debtor's breach of his fiduciary duty.

"'Defalcation' means 'the misappropriation of funds held in trust for another in any fiduciary capacity, and the failure to properly account for such funds.'" *Shriners Hosp. for Children v. Bauman (In re Bauman)*, 461 B.R. 34, 45 (Bankr. N.D. Ill. 2011). "Defalcation has also been defined as 'a failure to account for money or property that has been entrusted to another.'" *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 775 (Bankr. N.D. Ill. 2010) (citing *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr. N.D. Ill. 1994)). The Supreme Court has determined that a finding of defalcation under section 523(a)(4) includes a culpable state of mind requirement involving knowledge of or reckless conduct. *Bullock*, 569 U.S. at 273-74.

Plaintiffs acknowledge the amount of work to be done in Osseo would likely exceed $25,000. Defendant had an express fiduciary duty owed to the Plaintiffs as a result of the trust created as a matter of law based on the

relationship of the parties. The trust *res* was in the aggregate amount of $40,000. Defendant has failed to produce any clear and convincing evidence to demonstrate that the trust *res* was used for the benefit of and devoted to the "labor, services, materials, plans and specifications" for the two projects.

    Placing the burden on the Plaintiffs under the facts before the Court would create an impossible task. It is clear the original amount of the trust fund was $40,000, comprised of $25,000 and $15,000 for the respective projects. The Plaintiffs repeatedly asked Defendant for an accounting of the expenditures. They did so periodically during construction, after terminating the contracts, and in connection with the state court lawsuit. Despite testifying he had an accounting "at home," the Defendant never produced it. Defendant failed to account for expenditures from the trust funds and provided mostly unidentified receipts and estimates. This is more than sufficient to constitute defalcation for the purposes of section 523(a)(4). Defendant was given ample opportunity to produce documents proving the funds were expended for the purposes required. He had the opportunity to do so at trial and to identify and explain each of the 35 receipts or estimates that were admitted into evidence. He did not do so. Where, as here, the information and detail necessary to establish the disbursement of the trust funds was solely and exclusively under the control of Defendant, Plaintiffs can be expected to do no more than establish the amount of the trust *res* and that they received no accounting to establish a prima facie case. The burden in this case then shifts to Defendant

to present some explanation and accounting in order to rebut that prima facie case. He did not do so.

The standards for collateral estoppel are well established. "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state–court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." *Allen v. McCurry*, 449 U.S. 90, 96 (1980).

Issue or claim preclusion bars the relitigation of issues that have actually been decided in a previous case between the same parties. *State v. Nommensen*, 2007 WI App 224 ¶ 20, 305 Wis. 2d 695, 741 N.W.2d 481. Under Wisconsin law, the elements of claim preclusion are: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction. *Wickenhauser v. Lehtinen*, 2007 WI 82 ¶ 22, 302 Wis. 2d 41, 734 N.W.2d 855. Similarly, the doctrine of collateral estoppel provides that a factual issue which has been litigated and finally determined in a prior lawsuit may not be relitigated in a subsequent lawsuit. *Littlefield v. McGuffey (In re McGuffey)*, 145 B.R. 582, 587 (Bankr. N.D. Ill. 1992). The Seventh Circuit Court of Appeals held that collateral estoppel is applicable to cases in which a court hearing a non-bankruptcy case has finally determined factual issues relevant to a subsequent dischargeability claim, as long as the

non-bankruptcy court used the same standards that a bankruptcy court would have used in determining those issues. *Id.* (citing *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987)).

Because the issue of the unaccounted for trust *res* was adjudicated by the state court in January 2017 when the parties and issue of amount were identical, and where there was a final judgment on the merits in the prior action of which Defendant could have sought review but did not, the Court determines that collateral estoppel bars the relitigation of the amount of the trust funds at issue. The state court determined (and Plaintiffs agreed) that the sum that was not accounted for or returned was $23,825.

## CONCLUSION

The judgment is nondischargeable for Defendant's breach of fiduciary duty in the amount of $23,825.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated:  February 23, 2018

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge